UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA  DIVISION

CHARLES A. SHOPHER, SR.,

     Plaintiff,

v.                                             Case No. 5:15cv48/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.
_____/

<u>MEMORANDUM ORDER</u>

     This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Charles A. Shopher, Sr.'s applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83.  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment.  Upon review of the record before this court, I conclude the findings of fact and determinations of the

Commissioner are supported by substantial evidence and application of the proper legal standards.  The decision of the Commissioner, therefore, will be affirmed.

## ISSUES ON REVIEW

Mr. Shopher, who will be referred to as claimant, plaintiff, or by name, raises four issues on appeal.  He claims (1) the ALJ erred as a matter of law in failing to provide adequate reasoning for rejecting the opinion of Dr. Mustafa, one of his treating physicians, and failing to develop a full and fair record; (2) the RFC determination is not supported by substantial evidence because the ALJ improperly afforded great weight to the opinion of a Single Decision Maker and essentially adopted the findings of non-examining sources; (3) the credibility determination is not supported by substantial evidence; and (4) the Step 4 determination is not supported by substantial evidence because it is based on vocational expert testimony elicited in response to an incomplete hypothetical question.

## PROCEDURAL HISTORY

On May 2, 2011, Mr. Shopher submitted an application for SSI; shortly thereafter, on May 20, 2011, he submitted an application for DIB, alleging in both disability beginning December 20, 2010 due to blurry vision, back pain, foot pain,

vertigo, sleep apnea, a left testicular cyst, and melanoma.  T. 210-30.[1]    The
Commissioner denied the applications initially and on reconsideration.  T. 26-37,
132-41.  The ALJ conducted a hearing, after which he determined Mr. Shopher was
not disabled under the Act.  T. 26-37.  The Appeals Council denied claimant's request
for further review on January 5, 2015, and the ALJ's decision became the final
determination of the Commissioner.  T. 1-6.

<u>FINDINGS OF THE ALJ</u>

In his written decision, the ALJ made a number of findings relevant to the
issues raised in this appeal:

•    Claimant meets the insured status requirements of the Social Security
Act through December 31, 2015.  T. 28.

•    As of the date of the decision, claimant had not engaged in substantial
gainful activity since December 20, 2010, the alleged onset date (20 C.F.R. §§
404.1571, *et seq.* and 416.971, *et seq.*).  T. 28.

•    Claimant has the following severe impairments: degenerative disc
disease, mild facial paralysis, pain, and sleep apnea (20 C.F.R. §§ 404.1520(c),

---

[1] The administrative record, as filed by the Commissioner, consists of eleven volumes (docs. 16-1 through 16-11) and has 632 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

416.920(c)).  T. 28.

- • Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  T. 29.

- • Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(b), except he is limited to sitting, standing, or walking six hours in an eight-hour workday.  He can work a normal eight-hour workday with normal breaks but is limited to frequent climbing, balancing, stooping, kneeling, crouching and can occasionally climb ladders, ropes, and scaffolds.  T. 29.

- • Claimant is capable of performing past relevant work as a retail manager, food quality controller, and plastics quality controller, none of which requires performance of work-related activities precluded by his residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).  T. 31.

- • Claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2010 through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).  T. 32.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."  *See Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be

so severe that the plaintiff not only is unable to do his previous work, "but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a

disability claim in five steps:

1.    If  the claimant is performing substantial gainful activity, he is not

disabled.

2.    If the claimant is not performing substantial  gainful activity, his

impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has

severe impairments that have lasted or are expected to last for a continuous period of

at least twelve months, and if his impairments meet or medically equal the criteria of

any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is

presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.[3]

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates claimant's residual functional capacity and vocational factors, claimant is not disabled.

### FACT BACKGROUND[4]

Mr. Shopher was born on October 4, 1970 and was forty-two years old at the time of the hearing before the ALJ.  T. 43.  Claimant testified he had a GED but no college degree, although he had been taking online theology classes since 2011.  T. 44-45.  He also held three horticulture certificates – in pesticides, insecticides, and greenhouse/greenhouse management.  T. 44.  Plaintiff recounted his work history, much of which included quality control work and work for temporary employment agencies.  T. 45-49.

---

[3] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[4] The facts set forth were derived primarily from plaintiff's testimony at the hearing and also the administrative record.  Plaintiff does not challenge the ALJ's findings regarding his claimed impairments.  Plaintiff's medical history thus has little bearing on the issues raised in this appeal and need not be addressed in depth.

Case No. 5:15cv48/CJK

Mr. Shopher claims to have become disabled in December 2010 as a result of disorientation, dizziness, and blurred vision, which made him unable to "focus."  T. 50.  He testified the episodes lasted from two or three days to a couple of weeks; he later said they occurred daily and lasted from fifteen or twenty minutes to hours.  T. 53-55.  He never received a diagnosis and "still [didn't] really know what[ was] going on," but he had to lay down when the episodes occurred; he also asked his kids to "rub [his] back, neck, and anything else."  T. 53-56.  According to plaintiff, "there [was] nothing that help[ed] [him].  It d[id] its own thing and [he] just, kind of, roll[ed] with it, if you will."  T. 56.

In addition to the disorientation, dizziness, and blurred vision, claimant described "extreme pain  in [his] . . . ankle areas where it felt like somebody was stabbing [him] to say the least."  T. 50.  He had tingling and numbness in his legs and feet and stabbing pains in his legs and ankles that "fe[lt] like walking on glass."  T. 57.  He had to sit down and could not move.  T. 57.  He saw a podiatrist and had CT scans, MRIs, x-rays, and blood work.  T. 57-58.  Claimant was diagnosed with tarsal tunnel syndrome but was told by his doctor that "because it[ was] neurological there wasn't anything that they could do from their standpoint."[5]  T. 58.  He was referred

---

[5] "The tarsal tunnel refers to the canal formed between the medial malleolus (part of the ankle bone, this is the bump on the inside of the ankle) and the flexor retinaculum (a band of ligaments that

to a neurologist and prescribed medication, which failed to alleviate the pain.  T. 58.
When the pain occurred, he had "to get off [his] feet."  T. 59.

      With regard to his back, claimant testified the "middle section of [his] back and
[his] lower back [were] constantly a throbbing pain, if you will.  And [his] lower
back, it d[id] something where [he] g[ot], like a popping and [had] pain that[ would]
just shoot down [his] leg."  T. 59.  Plaintiff's biggest problem was "probably [his]
lower back and [his] legs in terms of between [his] midsection and [his] lower back;"
at the time of the hearing, his "middle section" was causing the most difficulty.  T.
60.  Claimant testified he also had tingling and numbness in his face and hands once
or twice a week that lasted an hour or less.  T. 69-70.

      Plaintiff claimed to have difficulty with "[e]verything."  T. 60.  He could "get
in the car and drive and as [he was] driving it just – the pain in [his] legs, sometimes
[he had] to take [his] foot off the gas.  Even going to the washroom sometimes. . . .
Taking a shower."  T. 60.  He had difficulty sitting comfortably and tried to "ease the
pain off of [his] back" and "stretch it a little bit."  T. 60-61.  Even when

---

s t r e t c h e s     a c r o s s     t h e     f o o t ) . "
http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/peripheral_nerve_surg
ery/conditions/tarsal-tunnel-syndrome.html.  "Inside the tarsal tunnel are the nerves, arteries, and
tendons that provide movement and flexibility to the foot."  *Id.*  "One of the nerves in the tarsal
tunnel is the tibial nerve, which provides sensation to the bottom of the foot."  *Id.*  "When this nerve
is compressed, the resulting condition is called tarsal tunnel syndrome (TTS)."  *Id.*

uncomfortable due to back pain, plaintiff was able to sit for approximately thirty minutes and do school work.  He then would get up, maybe walk around for a few minutes, and then go "right back and sit down at [his] laptop and go at it again."  T. 62.  He had difficulty sitting on the toilet, and it took him longer to bathe himself.  T. 63-64.  His children performed most household chores, but if he felt "halfway decent," he would assist with chores such as taking out the trash, which typically occurred once or twice a week.  T. 64-65.  Plaintiff did no heavy lifting, but occasionally went grocery shopping with his wife and sat and waited for her.  T. 65-66.

Due to his condition, claimant had to delay his theology classes for approximately one month because he was unable at times to focus and read, which prevented him from timely completing homework assignments.  T. 66.  He said he could not afford the medical treatment he needed.  T. 67.  A year before the hearing, however, he visited a neurosurgeon about his back and legs.  T. 68.  He was told nothing could be done to help him because surgery in the thoracic region would be too dangerous and he did not need surgery in the lumbar area.  T. 68-69.  Plaintiff applied for unemployment, although it is not clear whether it was before or after he left his last job.  T. 72.

Plaintiff explained at the hearing that he pastored a very small congregation, including primarily his immediate family, but earned no income from the endeavor. T. 75-76.  Before that, he was a pastor in Illinois for three months at Apostolic Fire Ministries, preaching to his immediate family, as well as that of his assistant pastor, and an occasional visitor.  T. 76-77.  Plaintiff's last employment, picking parts in a Nissan plant, ended when he "couldn't do it anymore."  T. 78.  He explained he had been given a list of parts to pull and "spent most of [the] day on [his] feet just walking around."  T. 78.  At some point, he approached his boss and said he was "going through issues" and "couldn't do it anymore."  T. 79.  "[B]etween [his] legs and so forth, [he] couldn't do what was required of [him] any longer."  T. 79.  Plaintiff clarified "it wasn't because [he was] trying to be lazy or anything.  It[ was] just that [his] body and the pain that [he] was in and with being able to try to read th[e] list, focus on th[e] list, drive th[e] vehicle, and to be able to pull the bumpers and the car doors and so forth.  It just – it was beyond [him.]  Beyond [him] pushing [him]self and trying to, so to speak."  T. 79-80.  At the time he quit, claimant had been working at the Nissan plant "maybe a few months."  T. 80.

Mr. Nicholas Fidanza, a vocational expert ("VE"), also testified at the hearing and questioned plaintiff about the nature of his past employment.  Plaintiff indicated

his past work in quality control involved mostly standing with little or no sitting. T 86-87.  The ALJ then posed a hypothetical to Mr. Fidanza based on an individual the same age and with the same education and work history as plaintiff and an RFC for light work, who could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit for at least six hours in an eight-hour work day with normal breaks; unlimited pushing and pulling; frequent climbing of ramps and stairs, balancing, stooping, kneeling, and crouching; and occasional climbing of ladders, ropes, and scaffolds.  T. 89-90.  When asked whether such an individual would be able to perform any of plaintiff's past work, Mr. Fidanza responded that such an individual could work as a retail manager and quality control tester in the food and plastics industries.  T. 90-91.

The ALJ then posed a different hypothetical, asking Mr. Fidanza if an individual with the same characteristics referenced above could perform an essentially sedentary job, standing and/or walking for about two hours in an eight-hour workday.  Mr. Fidanza testified that such an individual could not perform any of plaintiff's past relevant work but could perform other jobs, including food and beverage order clerk, charge account clerk, and call-out operator.  T. 91-92.  If such an individual were limited to a stand/sit option but could sit and stand for at least four

hours in an eight-hour workday, he could perform the three jobs previously identified but the number of available jobs would be reduced fifty percent.  T. 92-93.

Plaintiff's counsel asked Mr. Fidanza about the effect of being able to sit for only four hours and performing the remainder of the workday through a combination of standing and/or walking.  T. 94.  Mr. Fidanza responded that if such an individual would be required to leave the work station and be gone for more than ten percent of the day, he would be unable to perform any of the jobs identified.  T. 94.  When asked whether employers would allow an employee to elevate his feet at the work station to waist level or above, Mr. Fidanza said "[n]o."  T. 95.  Counsel then asked Mr. Fidanza about an individual suffering from episodes of blurry vision on an average of once per day, lasting anywhere from fifteen minutes to the remainder of the work day and rendering him unable to maintain production or pace.  T. 95-96.  Mr. Fidanza testified that such an individual would be precluded from performing any job in the local or national economy.  T. 96.

With regard to the medical record, Mr. Shopher experienced several episodes of blurry vision, head pain, back pain, facial numbness, facial droop, and weakness and numbness in the left arm.  T. 319-28, 344-46, 364-65, 369-71, 382-86, 409-11, 438-40, 444-48, 480-84, 561-69, 582-88, 603-20, 628-30.  He was admitted to the

hospital at least three times.  T. 319-22, 382-91, 412-21, 442-43, 488-96, 582-88, 603-20.  Plaintiff had numerous tests and x-rays, the results of which largely were normal.  T. 337-42, 360, 379-83, 398, 405-08, 422-26, 430-37, 446, 521-28, 551-52, 574-75, 590-91, 619-20, 629, 631.  Although no definitive diagnosis was made, it appears plaintiff suffered from complicated migraines and/or a possible transient ischemic attack.[6]  T. 365, 383, 440, 446.  Mr. Shopher also had foot and ankle pain and sleep apnea that was controlled through the use of a CPAP machine.  T. 364, 366-67, 427-29, 449-64, 467, 485-86, 499-503, 505-16, 533-34.

Of note, on June 2, 2011, Dr. Nazima Mustafa provided a functional capacity assessment.[7]  T. 362-63.  She listed plaintiff's diagnoses as "lumbago, vertigo, OA, foot pain, vision disturbance" and indicated his prognosis was "guarded/has not improved."  T. 362.  As for plaintiff's symptoms, Dr. Mustafa recorded "low back pain, bilateral ankle and foot pain, blurry vision, dizziness & nausea" and stated the side effects of plaintiff's medications could cause dizziness, drowsiness, and nausea

---

[6]  A transient ischemic attack is a mini-stroke.  *See* http://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/basics/definition/con-20021291.

[7]  The functional capacity assessment is the only document appearing in the record from Dr. Mustafa.  It is not clear from that document what type of physician Dr. Mustafa is, although it appears she is either an internist or primary care physician in Aurora, Illinois who saw plaintiff on two occasions in connection with back and foot pain.  *See* T. 249-50, 261.  Plaintiff's appeal is based largely on the ALJ's failure to assign more weight to Dr. Mustafa's opinion.

which could impact plaintiff's capacity to work.  T. 362.  Dr. Mustafa opined Mr.

Shopher could sit for thirty minutes at one time and for two hours total in an eight-

hour workday, stand and walk for thirty minutes at one time and for one hour total in

an eight-hour workday, and occasionally lift and carry ten pounds or less.  T. 362-63.

She also opined plaintiff would require the ability to take breaks and recline or lie

down throughout the workday in excess of normal breaks and shift positions at will.

T. 362.  Dr. Mustafa found plaintiff restricted in ability to reach for fifty percent of

the workday and that he likely would be absent from work more than four times per

month.  T. 363.

The ALJ found plaintiff suffers from a number of severe impairments: mild

facial paralysis, degenerative disc disease, pain, and sleep apnea.  T. 28.  Based on

the medical evidence and testimony at the hearing, however, the ALJ concluded

plaintiff had the residual functional capacity to perform light work.  T. 29.  In

particular, the ALJ found plaintiff could perform sedentary level jobs limited to

sitting, standing, or walking six hours in an eight-hour workday, with frequent

climbing, balancing, stooping, kneeling, crouching and occasional climbing of

ladders, ropes, and scaffolds.  T. 29.  In so finding, the ALJ noted plaintiff's

statements concerning the intensity, persistence, and limiting effects of his symptoms

were "not entirely credible."  T. 30.  Specifically, the ALJ explained that

> the . . . residual functional capacity assessment is supported
> by a comprehensive assessment of the medical record from
> multiple medical sources that have given the undersigned
> a full picture of the claimant's residual functional capacity.
> The record reflects the claimant's longitudinal history, both
> negative and positive progress notes, and a comprehensive
> summary of his treatment.  Additionally, the claimant's
> credibility has been taken into account and weighed against
> the medical opinions.  In that respect, while it appears that
> the claimant has suffered some injuries there are none that
> exclude his [sic] from working at the level prescribed in the
> residual functional capacity above.  Overall, the claimant
> presents his case all less than fully credible.  The
> claimant's lack of compliance with his treatment plans
> undermines his credibility.  Also, his doctors have noted
> that he repeatedly emphasizes the gravity of his complaints,
> despite mostly normal exams . . . .  Further, his abilities
> have remained intact to the level prescribed in the residual
> functional capacity.  The undersigned has considered the
> claimant's impairments and included them in the residual
> functional capacity.

T. 31.  The ALJ concluded plaintiff could perform his past relevant work as a retail

manager, food quality controller, and plastics quality controller, both as actually and

as generally performed, and thus was not disabled.  T. 31-32.

<u>ANALYSIS</u>

I.      Treating Physician's Opinion

       Claimant first contends the ALJ erred as a matter of law in failing to provide

adequate reasoning for rejecting the opinion of Dr. Mustafa.  Under the applicable regulation,

> [t]reating source means your own physician . . . who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you . . .  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals . . . if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 416.902.  The regulations explain that "[w]hen a treating source has seen you a number of times and long enough to have formed a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source."  20 C.F.R. § 416.927(d)(2)(I).  "Although there is no specific number of times that a claimant must visit a physician for that doctor to be a treating source, the relationship must be or have been ongoing; a single meeting cannot be sufficient."  *Rollins v. Colvin*, 2014 WL 3689787, at 5 (N.D. Ala. July 22, 2014); *see T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 917 (11th Cir. 2014) (holding that examiners who met with claimant only once "did not have any 'ongoing treatment relationship' sufficient to accord them status as treating physicians" and that ALJ thus "had the discretion to give their opinions less than 'substantial or considerable' weight"); *Chaney–Everett v. Astrue*, 839 F.

Supp. 2d 1291, 1303 (S.D. Fla. Mar. 6, 2012) (finding no ongoing treatment relationship based on two visits). Indeed, "[t]he regulation assumes that a treating source will have seen a claimant 'a number of times' rather than just once; a 'longitudinal picture' is impossible to achieve with only a single examination." *Rollins*, 2014 WL 3689787, at *5 (quoting 20 C.F.R. § 416.927(d)(2)(I)).

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440; *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases). If a treating physician's opinion as to the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ is to give it controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Where a treating physician has merely made conclusory

statements, however, the ALJ may afford them such weight as is supported by clinical

or laboratory findings and other consistent evidence of a claimant's impairments. *See*

*Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v.*

*Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion

does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical

opinion based on (1) the length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3) medical

evidence supporting the opinion; (4) consistency with the record as a whole; (5)

specialization in the medical impairments at issue; and (6) other factors which tend

to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

Opinions on certain issues, such as a claimant's RFC and whether a claimant

is disabled, "are not medical opinions, . . . but are, instead, opinions on issues

reserved to the Commissioner because they are administrative findings that are

dispositive of a case; i.e., that would direct the determination or decision of

disability."  20 C.F.R. § 416.927(d); *see* SSR 96-5p; *Adams v. Comm'r, Soc. Sec.*

*Admin.*, No. 14-11231, 2014 WL 4922215, at *2 (11th Cir. Oct. 2, 2014); *Denomme*

*v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 87, 877-78 (11th Cir. 2013); *Bell v.*

*Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  Opinions reserved to the

Commissioner, even when offered by a treating physician, are not entitled to controlling weight or special significance. *See* SSR 96-5p. "Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* Although a physician's opinions about what a claimant can still do or the claimant's restrictions may be relevant, therefore, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c); SSR 96-5p; *see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").

Here, the ALJ gave little weight to Dr. Mustafa's opinion, which was expressed on a June 2, 2011 Residual Functional Capacity Questionnaire. In the questionnaire, Dr. Mustafa stated plaintiff had been a patient since August 31, 2010 and was last seen on February 17, 2010, which presumably was an error and actually meant February 17, 2011. T. 362-63. Dr. Mustafa indicated plaintiff could walk five city blocks without rest or pain; occasionally lift and carry ten pounds but never lift and carry twenty pounds; stand, sit, and walk for thirty minutes at a time; sit for two

hours; and sit and stand for one hour.  T. 362-63.  According to Dr. Mustafa, claimant needed a job with a sit-stand option and to be able to recline or lie down during the day.  T. 362-63.  She also reported plaintiff had been diagnosed with lumbago, vertigo, osteoarthritis, foot pain, and vision disturbance.  T. 362.

Notably, the record does not contain any treatment notes from Dr. Mustafa.  As a threshold matter, therefore, it is not clear Dr. Mustafa qualifies as a treating physician.  *See* 20 C.F.R. §§ 404.1502, 416.902.  In fact, it appears that, at the time of the opinions favored by plaintiff, Dr. Mustafa had examined plaintiff only twice and only in connection with foot and back pain.  Unless Dr. Mustafa were a treating physician, the opinions favored by claimant are not entitled to any deference or special consideration.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (holding that one-time examiners are not treating physicians for purposes of Social Security claims); *Gibson v. Heckler*, 779 F.2d 616, 623 (11th Cir. 1986) (same).  Plaintiff, having the burden, has not established treating physician status for Dr. Mustafa, as the record does not show that Dr. Mustafa had an ongoing treatment relationship with plaintiff sufficient to allow the doctor to form a longitudinal picture of any of plaintiff's impairments.  *See, e.g., Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (holding that "[a]

claimant for disability insurance benefits bears the burden of proving that he is unable to perform his previous work" and that the factors to consider "[i]n determining whether the claimant has satisfied this initial burden" include objective medical facts or clinical findings and diagnoses of examining physicians); *Dillard v. Astrue*, 834 F. Supp. 2d 1325, 1331-32 (S.D. Ala. 2011) (citing *Bowen*).

Even assuming Dr. Mustafa qualified as a treating physician, the opinions expressed in the questionnaire were conclusory and unsupported by objective medical findings. T. 362-63. *See* 20 C.F.R. § 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips*, 357 F.3d at 1240-41. Although Dr. Mustafa noted plaintiff's diagnoses, such diagnoses do not establish, or even corroborate, the limitations Dr. Mustafa imposed. T. 362. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work" (*quoting McCruter v.*

*Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  Moreover, Dr. Mustafa failed to respond to a question asking whether the "patient's impairments [are] reasonably consistent with the symptoms and functional limitations described in this evaluation?" T. 363.  *See* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. When you submit evidence received from another source, you must submit that evidence in its entirety, unless you previously submitted the same evidence to us or we instruct you otherwise.").  Dr. Mustafa's opinion is further undermined by the fact that it appears she had not seen plaintiff at all within four months of completing the questionnaire.  Indeed, the ALJ cited the lack of recent treatment history as support for his decision to assign little weight to Dr. Mustafa's opinion.  The undersigned finds the ALJ's explanation adequate and supported by substantial evidence in the record, which demonstrates that although plaintiff may have experienced symptoms from his various impairments, none were of disabling severity.  *See* 20 C.F.R. §§ 404.1527(c)(3) and (4), 416.927(c)(3) and (4); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41; *see also Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 13-14 (11th Cir. 2012) (upholding ALJ's decision to discount treating physician's opinions, noting in part "none of these opinions cited

to specific objective medical evidence or test results or referenced any specific information regarding the results of physical or mental evaluations in support of those opinions").[8]

## II.    Duty to Develop the Record

Plaintiff contends the ALJ's failure to provide sufficient and clear rationale for rejecting Dr. Mustafa's opinion is compounded by his failure to obtain Dr. Mustafa's treatment records.  The Social Security disability benefits process is inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), *Crawford & Co. v. Apfel*, 235 F.3d 1298 (11th Cir. 2000), and is informal.  *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b).  Due to this informality, ALJs, like European magistrates, have a duty to develop a complete record.  *Kendrick*, 998 F.2d at 456.  In this Circuit,

---

[8] Dr. Mustafa's opinion also was expressed on a pre-printed check-off form.  T. 362-63.  *See* 20 C.F.R. § 404.1527(c)(3), 416.927(c )(3); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.  Where an opinion, even that of a treating physician, is offered on a preprinted check-off form that does not detail evidence in the record supporting the work-related limitations identified, such opinion will not bind the Commissioner.  Indeed, courts have found such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein.  *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."  (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985);  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))).  Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole."  *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983).

the ALJ has an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The duty to develop the record exists even if the plaintiff is represented by a lawyer or paralegal. *Brown*, 44 F.3d at 934 (*citing Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981) (Unit B)); *Smith*, 792 F.2d at 1551 (*citing Cowart*, 662 F.2d at 735). The ALJ is required to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Company*, 235 F.3d at 1304.

That does not mean, however, the ALJ must search to the last document to find every possible piece of relevant evidence. Rather, the ALJ must have sufficient evidence to decide the case. Where the ALJ has sufficient information to decide the case, he or she can do so. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to make a decision, no showing of prejudice is made). Significantly, "[t]he claimant bears the burden of

proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(a), (c).

Here, claimant failed to provide any treatment records from Dr. Mustafa. Based on the record before the ALJ, it was not clear what records might have existed or that they would have any bearing on plaintiff's claim. Moreover, the ALJ had sufficient evidence before him to decide the matter. The record contains numerous entries from various physicians, none of which support Dr. Mustafa's opinion. The undersigned, therefore, cannot conclude the ALJ erred in failing to obtain Dr. Mustafa's treatment records.

III.    Single Decision Maker

Plaintiff next argues the ALJ erred in considering the RFC assessment of Jeff Grimes, a State agency non-examiner or "single decisionmaker" ("SDM"), whose opinion, plaintiff maintains, the ALJ was not allowed to consider as opinion evidence. It is not clear from the record, however, the extent to which the ALJ relied upon the Grimes opinion as opposed to the opinion of Dr. Peele. Assuming the ALJ gave great weight to Grimes' opinion, such error was harmless because the ALJ relied at least equally on Dr. Peele's opinion, which was supported by and consistent with the

record as a whole, including Grimes' opinion.  T. 30-31, 128-29, 138-39.  *See* 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4); SSR 96-6p; *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (noting although ALJ mistakenly referred to SDM as a doctor and should not have given any weight to SDM's opinion, any error was harmless because ALJ stated he considered all evidence in the record and nothing indicates SDM's opinion was anything more than cumulative of other evidence).

IV.    Plaintiff's Credibility

Plaintiff also challenges the ALJ's credibility determination, arguing it was not supported by substantial evidence.  In rendering his decision, the ALJ found that although claimant's medically determinable impairments could reasonably be expected to cause his symptoms, claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.  T. 30. Specifically, the ALJ noted plaintiff's lack of compliance with his treatment plan and repeated emphasis on the gravity of his complaints despite having mostly normal exams.  T. 31.  The ALJ also noted plaintiff's abilities remained intact and none of his impairments precluded him from performing light work.  T. 31. The ALJ's reasons for discounting plaintiff's credibility are supported by substantial evidence.

A claimant who attempts to prove disability based on subjective complaints must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to the alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26.  If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26.  In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The undersigned cannot conclude the ALJ was clearly wrong in assessing plaintiff's credibility.  Indeed, substantial evidence supports the ALJ's determination that plaintiff's statements regarding the intensity, persistence, and functionally

limiting effects of his alleged symptoms were not fully credible.  T. 29-31.  Although the medical findings may provide an objective basis for some of plaintiff's impairments and other symptoms, they do not reflect symptoms of disabling severity. T. 31.  In fact, despite complaints of severe pain, numerous x-rays and other tests and examinations came back essentially normal.  T. 319-20, 334, 338-40, 342, 365, 367, 379, 427, 430-31.  As the ALJ found, there simply is no indication in the record that plaintiff suffers from any condition that excludes him from working at the prescribed RFC.  T. 31.  *See* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), 416.929(c)(3), 416.945(a)(3); SSR 96-6p; SSR 96-7p; *T.R.C., ex rel. Boyd v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 917-18 (11th Cir. 2014); *Cooper*, 521 F. App'x at 807.

V.     Hypothetical Question

Finally, plaintiff complains the hypothetical the ALJ posed to the vocational expert was incomplete because the ALJ failed to properly assess and weigh Dr. Mustafa's opinion and, instead, improperly relied on the opinions of the Single Decision Maker and non-examining State Agency Physician.  This argument fails for the reasons set forth above.

<u>CONCLUSION</u>

The undersigned finds the Commissioner's decision supported by substantial evidence and application of the proper legal standards and, therefore, that it should be affirmed.[9]  *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

Accordingly, it is ORDERED:

1.      The decision of the Commissioner is AFFIRMED and plaintiff's applications for DIB and SSI are DENIED.

2.      The clerk is directed to close the file.

DONE AND ORDERED this 26th day of May, 2016.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Case No. 5:15cv48/CJK